**Affirmed and Opinion filed April 23, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00016-CR

## GERARD  REGINALD  LEASSEAR, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1239125**

### O P I N I O N

A jury convicted appellant Gerald Reginald Leassear of capital murder,[1] and the trial court assessed a mandatory punishment of life imprisonment without parole.[2]  Appellant challenges his conviction on grounds that the trial court erred by (1) granting the State's request to excuse a venire member; (2) admitting extraneous-offense evidence; and (3) failing to submit a jury instruction on the

---

[1] *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2014).

[2] *See* Tex. Penal Code Ann. § 12.31(a)(2) (Vernon Supp. 2014).

lesser-included offense of felony murder.[3]  We affirm.

## BACKGROUND[4]

Jorge Davila drove his truck to a Houston nightclub on November 30, 2008. He spent several hours at the club with friends.  Davila and his friends walked to a nearby restaurant after the club closed at 2:00 a.m. on December 1.  He and his friends returned to the nightclub parking lot around 4:00 a.m.  Davila retrieved his truck.

Eduardo Martinez was among the group of friends that went to the nightclub and walked to the restaurant on the night of November 30-December 1, 2008. Martinez returned to the nightclub parking lot with Davila at 4:00 a.m.  Martinez was unable to start his car, and he asked his friends for help pushing his car to a safer location in the parking lot.

Davila exited his truck and left its engine running.  Davila, Martinez, and another friend, Patricia Fernandez, pushed Martinez's car closer to the nightclub building.

Martinez testified that, as he and his friends pushed the car, he heard Davila yell and run back towards his truck.  Martinez then heard several gunshots.  He saw the flash from a gun's muzzle light up the inside of Davila's truck, and he saw the silhouette of a shooter wearing a hooded jacket inside.  Martinez testified that he saw Davila fall to the ground before reaching his truck.  Martinez then saw the truck speed off.  Martinez ran towards Davila, and found Davila to be bleeding profusely.  Martinez administered aid until an ambulance arrived and rushed Davila to a hospital.  Police officers soon arrived on the scene.  Martinez testified

---

[3] *See* Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2011).

[4] Appellant does not challenge the sufficiency of the evidence supporting his conviction. Therefore, we recite only those facts necessary to the disposition of this appeal.

2

that several officers guided him to a white car in the parking lot. The car was unoccupied and its engine was running. Martinez testified that he did not know when the white car had arrived at the parking lot.

Fernandez also helped Martinez push his car towards the nightclub building on December 1, 2008. Fernandez testified that, as she, Davila, and Martinez pushed the car, she heard Davila yell and run away. Fernandez turned and saw Davila at his truck. She then heard gunshots. She believed the gunshots to have come from inside Davila's truck. Fernandez then saw Davila hit the ground and the truck speed away. Fernandez testified that she was not able to see the driver of the truck as it sped away. She testified that she saw a white car in the parking lot after the truck sped away. The car's ignition was on.

A Harris County assistant medical examiner testified that Davila died at the hospital on December 1, 2008. The examiner determined Davila's cause of death to be multiple gunshot wounds, and the manner of his death to be homicide.

The State indicted appellant for capital murder. The indictment alleged that, on December 1, 2008, appellant, while in the course of committing and attempting to commit the robbery of Davila, intentionally caused Davila's death by shooting him with a deadly weapon, namely a firearm.

The jury found appellant guilty of capital murder, and the trial court assessed a mandatory punishment of life imprisonment without parole. Appellant timely appealed.

## JUROR EXCUSAL

In his second issue, appellant contends that the trial court abused its discretion in excusing venire member number 32.[5]

---

[5] In the interest of clarity, we address appellant's issues out of order.

3

## I.     Background

The trial court and the parties questioned the venire members during voir dire.   Venire member number 32 did not speak or otherwise respond to any question.   After the court and the parties completed their questioning, the court excused certain venire members for cause.   Venire member number 32 was not excused at this time.   The court then instructed the parties to exercise their peremptory strikes.   The parties exercised their strikes, and the court announced the names of 12 venire members chosen to serve as jurors and one member chosen to serve as an alternate juror.   Venire member number 32 was among those chosen to serve as jurors.   The court then excused all venire members who had not been chosen to serve.

Venire member number 32 next approached the bench.   He told the court that his English was not very good and that he did not know if he would be able to perform his duties as a juror.   The court informed the parties of the venire member's statement and allowed the parties to question venire member number 32. The State questioned the venire member as follows:

> [THE STATE]:  You just sat through a couple of hours voir dire?
>
> [VENIRE MEMBER NUMBER 32]:  Yes.
>
> [THE STATE]:  Were you able to understand the questions asked to you?
>
> [VENIRE MEMBER NUMBER 32]:  I was able but the reason is that there is some kind of question that I get one and a little at the middle and the end, but some of the words that I don't feel very comforting (sic) to —
>
> [THE STATE]:  I show as a profession you are a medical records assistant.
>
> [VENIRE MEMBER NUMBER 32]:  That's correct.

4

[THE STATE]:  With Memorial Hermann Health system?

[VENIRE MEMBER NUMBER 32]:  Yes.

[THE STATE]:  You've been doing that 14 years?

[VENIRE MEMBER NUMBER 32]:  Yes, that's correct.

[THE STATE]:  Now, you heard both sides ask multiple times about any questions, anything that you needed to tell us, right?

[VENIRE MEMBER NUMBER 32]:  Yes.

[THE STATE]:  Do you feel if you sat on this jury, understanding the gravity of the case, right?

[VENIRE MEMBER NUMBER 32]:  Uh-huh.

[THE STATE]:  You know how serious the case is.  Do you feel like you would not be able to follow the law?

[VENIRE MEMBER NUMBER 32]:  I would feel I wasn't getting along with the questions.

[THE STATE]:  Were there legal concepts that you feel you weren't able to get from either side?

[VENIRE MEMBER NUMBER 32]:  No.  No, I don't know what to say.

The State then asked the court to excuse venire member number 32 "given the language barrier" because the case raised difficult concepts, including "DNA, ballistics, and fingerprints."  Appellant argued in response that venire member number 32's English skills were sufficient for jury service.  Appellant noted that venire member number 32 had shown himself capable of communicating in English and that he had filled out his jury questionnaire, which indicated he could read and write in English.  The court deferred ruling on the issue until the following Monday.

A different judge heard the case the following Monday.  The court asked venire member number 32 the following:

> THE COURT:  Was there something that came up Friday during jury selection, some words you didn't understand?
>
> [VENIRE MEMBER NUMBER 32]:  Yes.
>
> THE COURT:  You don't remember what those were?
>
> [VENIRE MEMBER NUMBER 32]:  No.  That's the — especially in this kind of case, I was feeling like I going — I'm going to — some words are — that may not be in my vocabulary.
>
> THE COURT:  In normal conversation — you understand everything that I'm saying?
>
> [VENIRE MEMBER NUMBER 32]:  Yeah.
>
> THE COURT:  But when they were discussing some things on Friday, maybe some legal terms or something like that, you didn't understand; is that what happened?
>
> [VENIRE MEMBER NUMBER 32]:  Yes.  When I watching TV I always put the closed caption instead of just be listening because sometimes I cannot catch everything.
>
> THE COURT:  So is your concern when a witness is testifying that you may not understand some of what the witnesses are saying, or are you more concerned about what the lawyers are saying?
>
> [VENIRE MEMBER NUMBER 32]:  I'm concerning (sic) about everything like that.
>
> THE COURT:  Everything.  And do you think because of your concerns it would affect your ability to serve as a juror in the case?
>
> [VENIRE MEMBER NUMBER 32]:  That's what I was concerned.

The State again requested that the court excuse venire member number 32 based on his limited ability to understand English.  Appellant opposed the request.  The

court remarked that the jurors had not been sworn in and that an alternate juror was available. The court then granted the State's request, stating:

> Based on the case law provided to me by the State,[6] I think it's within my discretion to excuse [venire member number 32], and I am going to replace him with an alternate, . . . although he apparently is not automatically disqualified for not speaking the English language. But given what he told me, it could be problematic for him and it could be for the [c]ourt as well if he didn't understand the [c]ourt's charge.

The court excused venire member number 32, notified the alternate juror that she would sit on the regular jury panel, and administered the required oath to the jury members. *See* Tex. Code Crim. Proc. Ann. art. 35.22 (Vernon 2006). The case then proceeded to trial.

## II.    Analysis

Appellant argues that the trial court abused its discretion in excusing venire member number 32 because he was not disqualified under Texas Code of Criminal Procedure article 35.16(a)(11).

A trial court's authority to excuse prospective jurors exists until the entire jury is empaneled and sworn. *Wright v. State*, 28 S.W.3d 526, 533 (Tex. Crim. App. 2000). Article 35.16(a)(11) provides that the State or the defendant can challenge a prospective juror as incapable or unfit to serve on the jury for the reason "[t]hat the juror cannot read or write." Tex. Code Crim. Proc. Ann. art. 35.16(a)(11) (Vernon 2006). The requirement that a juror possess the ability to write "'is not satisfied by the ability of a proposed juror to write his name and nothing more. The requirement contemplates that he shall be able to express his ideas in writing.'" *Allridge v. State*, 762 S.W.2d 146, 165 (Tex. Crim. App. 1988) (citing *Hernandez v. State*, 506 S.W.2d 884, 887 (Tex. Crim. App. 1974)). We

---

[6] The record does not indicate the legal authority the State provided to the trial court.

7

review a trial court's decision to excuse a venire member pursuant to Article 35.16(a)(11) for abuse of discretion. *Flores v. State*, 871 S.W.2d 714, 718 (Tex. Crim. App. 1993).

A trial court also "has broad discretion to excuse prospective jurors for good reason." *Wright*, 28 S.W.3d at 533 (trial court did not abuse its discretion in excusing a prospective juror because her mother recently had died); *see also* Tex. Code Crim. Proc. Ann. art. 35.03, § 1 (Vernon Supp. 2014) (authorizing a trial court to discharge a prospective juror based on a sufficient juror excuse). "[C]hallenges not based upon a ground specifically enumerated in Article 35.16 are addressed to the sound discretion of the trial judge." *Maldonado v. State*, 998 S.W.2d 239, 248 n.14 (Tex. Crim. App. 1999); *see also State v. Morales*, 253 S.W.3d 686, 693 n.19 (Tex. Crim. App. 2008).

The State did not request that the trial court excuse venire member number 32 pursuant to Texas Code of Criminal Procedure article 35.16(a)(11) for his inability to read or write. Neither the State nor the trial court examined venire member number 32's reading and writing proficiency. The State requested that the court excuse venire member number 32 "given the language barrier," and the trial court excused the venire member stating that he "apparently is not automatically disqualified for not speaking the English language" but "it could be problematic for him and . . . for the [c]ourt as well if he didn't understand the [c]ourt's charge."

In this instance, the court may have acted within its discretion in excusing venire member number 32 for "good reason," regardless of whether it could have done so pursuant to Article 35.16(a)(11). *See Wright*, 28 S.W.3d at 533; *Erazo v. State*, 93 S.W.3d 533, 535 (Tex. App.—Houston [14th Dist.] 2002), *rev'd on other grounds,* 144 S.W.3d 487 (Tex. Crim. App. 2004) ("If a juror cannot understand the routine words and concepts used in a trial, the juror may be excused."); *see also*

*Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (appellate court must uphold the trial court's decision to excuse a venire member if it was correct under any theory of law applicable to the case).

In any event, we need not determine whether the trial court erred. Assuming, without deciding, that the trial court erred in excusing venire member number 32 pursuant to Article 35.16(a)(11) or for "good reason," we disregard any error because the record does not show that appellant was deprived of a lawfully constituted jury.

"[T]he erroneous excusing of a [venire member] will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury." *Jones*, 982 S.W.2d at 394. A defendant has no right to have any particular individual serve on the jury; rather, a defendant's "only substantial right is that the jurors who do serve be qualified." *Id.* at 393.[7] We presume that jurors were qualified absent some indication in the record to the contrary. *See Ford v. State*, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002).

Appellant does not argue that the jurors who served in his case were unqualified or that the jury that convicted him was otherwise unlawfully constituted. Therefore, we hold that the trial court's decision to excuse venire member number 32, if error, was harmless. *See* Tex. R. App. P. 44.2(b). We overrule appellant's second issue. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (overruling appellant's issue contesting the trial court's excusal of a potential juror for impartiality because there was nothing in the record

---

[7] The analysis differs when a juror is excused based on race, sex, or views on the death penalty. *See Snyder v. Louisiana*, 552 U.S. 472, 478 (2008); *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Feldman v. State*, 71 S.W.3d 738, 749 (Tex. Crim. App. 2002). Appellant does not assert that venire member number 32 was excused based on any of these reasons.

to indicate that the jurors who served were unqualified); *Jones*, 982 S.W.2d at 393.

## EXTRANEOUS-OFFENSE EVIDENCE

In his third issue, appellant contends that the trial court abused its discretion in admitting extraneous-offense evidence in violation of Texas Rules of Evidence 403 and 404(b).

## I.     Background

Appellant argued in his opening statement that the State could not produce a single eyewitness who could identify appellant as the person who shot Davila on December 1, 2008. Appellant repeated his argument at closing after the State had failed to produce such a witness. State's witnesses Martinez and Fernandez testified that they either saw or heard an individual shoot Davila from inside Davila's truck on December 1, 2008, and then drive away. Neither Martinez nor Fernandez could identify the assailant.

Appellant objected to the State's introduction of evidence regarding an armed robbery that occurred on December 9, 2008. The trial court overruled appellant's objection and admitted the evidence as permissible extraneous-offense evidence.[8]

---

[8] Appellant asserts in his appellate brief that he also objected to evidence of a police chase on December 13, 2008, that resulted in appellant's capture. The police chase commenced when a man, who alleged that appellant had taken his car and driven away, flagged down a passing police officer. The officer spotted the suspected stolen car and followed it; appellant was driving the car. The officer signaled to appellant to stop after appellant had committed a traffic violation. Appellant refused to pull over, and a high-speed chase ensued. Police officers eventually subdued appellant and discovered a gun in the suspected stolen car. The State's forensic experts testified that their analysis of the gun and eight cartridge casings found in Davila's truck after it was recovered showed the casings to have been discharged from the gun found in the suspected stolen car appellant was driving on December 13, 2008. Appellant objected to the introduction of evidence regarding the suspected stolen car in which appellant was apprehended on December 13, 2008. He requested that the court limit testimony and evidence on the matter, stating: "I would ask the Court to instruct [the State] to just start from

Lamahesha Albert testified that, on the morning of December 9, 2008, she parked her car outside a department store in west Houston. She arrived before the store opened at 9:00 a.m., and sat in her car talking on the phone. A gold car pulled up beside Albert. A man exited the car, opened Albert's passenger-side door, and pointed a gun at Albert's face. He demanded that she exit the vehicle. Albert complied and ran to the department store for help. The man then drove off in Albert's car, leaving behind the gold car.

Albert testified that the man who robbed her wore a black hooded sweatshirt and that the hood was not pulled over the man's head. At trial, Albert identified the man who robbed her as appellant.

The State called several police officers and forensics experts who described evidence found at the December 1, 2008 and December 9, 2008 crime scenes. The State's witnesses testified to the following: (1) the white car at the scene of Davila's shooting was a Dodge Stratus; (2) the gold car at the scene of Albert's robbery was a Dodge Intrepid; (3) a Dodge Stratus and a Dodge Intrepid are similar models, and both models are easy to steal; (4) the steering columns on both the Dodge Stratus and the Dodge Intrepid were torn away, which suggested the cars had been stolen; (5) an easily disposable cell phone was found inside Davila's truck once it was recovered; (6) an easily disposable cell phone was found inside

the issue of when the Harris County deputy sees the traffic violation or sees the information that corroborates that this car has been somehow involved in a robbery and starts chasing it and then talks about arresting the defendant and talks about recovering the pistol." The trial court agreed and refused to allow the State to question the individual whom appellant allegedly robbed on December 13, 2008. The court also instructed the State to begin questioning the police officer who had followed and arrested appellant from the point at which his attention was drawn to the suspected stolen car, and not earlier. Appellant complains on appeal that: "The December 13th police chase bore no similarity to Davila's shooting." We hold that appellant has not preserved a complaint regarding the introduction of evidence related to the December 13, 2008 police chase because he did not object to the introduction of that evidence in the trial court. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103.

the gold Dodge Intrepid; and (7) the recovered cell phones shared 19 contacts. Additionally, the State introduced maps showing the locations of the December 1, 2008 and December 9, 2008 crime scenes. The maps showed that both crimes occurred in west Houston; the scene of Albert's robbery was several miles directly north of the scene of Davila's shooting.[9]

## II. Analysis

Appellant contends that the trial court abused its discretion by admitting evidence of the December 9, 2008 robbery of Albert in violation of Texas Rules of Evidence 404(b) and 403 because the charged offense and the extraneous offense were not similar enough and the probative value of the extraneous-offense evidence was substantially outweighed by the danger of unfair prejudice. The State counters that the extraneous-offense evidence was admissible to prove appellant's identity as Davila's assailant; the State also argued that the evidence was more probative than unfairly prejudicial because the evidence rebutted appellant's argument that the State could not prove the identity of Davila's assailant without a positive eyewitness identification of the individual.

Texas Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b), 60 Tex. B.J. 1134 (1998, superseded 2015).[10] Rule 404(b)'s list of exceptions is illustrative, rather than

---

[9] The maps in evidence show the events to have taken place approximately five miles apart.

[10] The Texas Court of Criminal Appeals adopted revisions to the Texas Rules of Evidence, except as to Rules 511 and 613, effective April 1, 2015. *See* Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15-001 (Tex. Crim. App. Mar.

12

exhaustive, and extraneous-offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403, 60 Tex. B.J. 1134 (1998, superseded 2015).

We review a trial court's ruling on the admissibility of extraneous-offense evidence under an abuse-of-discretion standard. *De La Paz*, 279 S.W.3d at 343. As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold the trial court's ruling. *Id.* at 343-44. A trial court's ruling to admit extraneous-offense evidence is generally within the zone of reasonable disagreement if the evidence shows that (1) the extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* at 344.

Evidence of an extraneous offense may be admitted to prove identity only if identity is at issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). A trial court has considerable latitude in determining that identity is, in fact, disputed. *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008).

---

12, 2015). We cite to the previous version of the Rules because appellant's trial occurred in 2013, before the effective date of the amendments.

13

Identity may be placed in dispute by the defendant's opening statement or cross-examination as well as by affirmative evidence offered by the defense. *Id.*

Appellant contested his identification as Davila's assailant in his opening and closing statements. Additionally, appellant asserts in his appellate brief that identity was at issue. We determine that the trial court acted within its discretion in determining that appellant's identity as Davila's assailant, in fact, was disputed. *See id.* ("That the impeachment was not particularly damaging or effective in light of all of the evidence presented is not the question.").

Merely raising the issue of identity, however, does not automatically make the extraneous-offense evidence admissible. *Page*, 213 S.W.3d at 336. "When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Id.* (quoting *Martin*, 173 S.W.3d at 468). "[T]he theory of relevancy is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a 'signature.'" *Segundo,* 270 S.W.3d at 88. "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Id.* "Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual." *Id.* The extraneous offense and the charged offense can be different offenses, so long as the similarities between the two offenses are such that the evidence is relevant. *Mason v. State*, 416 S.W.3d 720, 740-41 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

14

Appellant argues that the December 9, 2008 robbery of Albert and the December 1, 2008 shooting of Davila were too dissimilar to establish a signature. He asserts that the December 9, 2008 robbery is dissimilar because it took place in a different part of town and did not involve the discharge of a weapon.

Appellant's first asserted dissimilarity is not supported by the record. The record shows that the two offenses took place in west Houston, and that the December 9, 2008 robbery took place approximately five miles directly north of the December 1, 2008 shooting.

We determine that the second asserted dissimilarity — the December 9, 2008 robbery did not involve the discharge of a weapon — is outweighed by several similarities between the two offenses such that the trial court acted within its discretion in (1) determining that the similarities between the charged offense and the extraneous offense were sufficient to show appellant's idiosyncratic or signature style of robbery; and (2) admitting the extraneous-offense evidence to prove identity. *See Page*, 213 S.W.3d at 336. Both the charged offense and the extraneous offense occurred within eight days of each other; both involved aggravated robberies; the perpetrator of each offense arrived at the scene in a similar model car; the steering column of each car was torn away, indicating that the car had been stolen; the perpetrator of each offense parked his car next to his victim's car; the perpetrator wielded a gun during each offense; witnesses to both crimes testified that the perpetrator wore a black hooded jacket or sweatshirt; the police found disposable cell phones inside abandoned vehicles connected to each crime; and the cell phones found in the vehicles connected to the crimes shared 19 contacts. We conclude that the trial court acted within its discretion in determining that evidence of the December 9, 2008 robbery of Albert was probative of appellant's identity as Davila's assailant. *See id.* at 338 (Texas law "does not

15

require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity.").

Further, we determine that the extraneous-offense evidence was not prohibited under Rule 403 as unduly prejudicial. Appellant asserts that the probative value of the evidence, if any, was substantially outweighed by its unfair prejudicial effect because the State spent an entire day presenting extraneous-offense evidence. The record shows that the State spent half a day during a five-day trial presenting evidence related to the December 9, 2008 robbery of Albert.[11] Albert's identification of appellant as the perpetrator of the robbery against her provided eyewitness testimony linking appellant to Davila's shooting, if the jury believed that the same individual committed both offenses. We determine that the trial court acted within its discretion in allowing evidence of the December 9, 2008 robbery because the presentation of the extraneous offense was not excessive in light of the length of the trial and the probative value of the evidence. *See Johnson*, 68 S.W.3d at 651-52 (extraneous-offense evidence was not unfairly prejudicial even though the State had DNA evidence, fingerprint evidence, and written and oral confessions because the extraneous-offense evidence "added a significant dimension to the evidence not otherwise before the jury — eyewitness testimony inferentially linking appellant to the crime").

We conclude that the trial court did not abuse its discretion in admitting extraneous-offense evidence regarding the December 9, 2008 robbery of Albert under Rules 404(b) and 403. We overrule appellant's third issue.

## JURY INSTRUCTION

In his first issue, appellant contends that the trial court erred by failing to

---

[11] The State spent another half a day presenting testimony related to the December 13, 2008 police chase and arrest of appellant, to which appellant did not object.

16

instruct the jury on the lesser-included offense of felony murder.

## I.    Standard of Review and Applicable Law

We review a complaint of jury-charge error under a two-step process. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We first determine whether error occurred. *See id.* If we find error, we then evaluate whether sufficient harm resulted from the error to require reversal. *See id.*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

A trial court errs in denying a defendant's request for a jury instruction on a lesser-included offense if two conditions are satisfied: (1) "the offense is actually a lesser-included offense of the offense charged" in the indictment; and (2) there is some evidence in the record "from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004); *Delacruz v. State*, 278 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). The first condition is satisfied in this case because felony murder is actually a lesser-included offense of capital murder. *Threadgill*, 146 S.W.3d at 665.

In determining whether the second condition is satisfied, we review all of the evidence presented at trial without considering its credibility or whether it conflicts with other evidence. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *Delacruz*, 278 S.W.3d at 488. Anything more than a scintilla of evidence may be sufficient to entitle a defendant to an instruction on the lesser-included offense, regardless of whether the evidence is weak, impeached, or contradicted. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012); *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). Although this threshold showing is low, "'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-

17

included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). "'If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required.'" *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) (quoting *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985)) (emphasis removed).

Felony murder is an unintentional murder committed in the course of committing a felony. Tex. Penal Code. Ann. § 19.02(b)(3) (Vernon 2011); *Threadgill*, 146 S.W.3d at 665. As relevant to this case, capital murder includes an intentional murder committed in the course of a robbery. Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2014); *Threadgill*, 146 S.W.3d at 665. "The element distinguishing capital murder from felony murder is the intent to kill." *Threadgill*, 146 S.W.3d at 665. Thus, for appellant "[t]o [have been] entitled to an instruction on felony murder there must be some evidence that would permit a jury rationally to find [appellant] had the intent to commit robbery but not to cause the death of [his] victim." *Id.*

Appellant argues that he was entitled to an instruction on the lesser-included offense of felony murder because the State's evidence is subject to multiple interpretations. He asserts:

> [T]here [is] ample evidence . . . [a]ppellant stole cars at gunpoint, *i.e.*[,] committed aggravated robbery . . . . Nothing, however, placed . . . [a]ppellant at the scene of Davila's murder. Th[e] evidence indicates that . . . [a]ppellant intended to participate in robbing Davila of his truck, but not that he intended (or that he intended anyone else) to kill Davila. In fact, in the other robberies committed by . . .

18

[a]ppellant, no weapon was fired.

Appellant's theory that he was not at the scene of Davila's murder, but nevertheless participated in robbing Davila is not supported by any rational view of the evidence. The State's evidence suggests only that the robbery of Albert and the robbery and shooting of Davila were committed by a single perpetrator each time. Appellant vigorously contested that the State proved he was the perpetrator of the December 1, 2008 robbery and shooting of Davila. If the jury believed that appellant was not at the scene of Davila's murder, then it rationally would have acquitted him of any crime because it would not have believed him to be the sole perpetrator of the robbery and shooting. The trial court, therefore, did not err in refusing an instruction on felony murder because the evidence does not support appellant's conviction for only the lesser-included offense of felony murder and not the greater offense of capital murder. *See id.*; *cf. Williams v. State*, 294 S.W.3d 674, 681 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Appellant's testimony that she did not commit any offense cannot support a lesser-included offense instruction . . . . Appellant's evidence, if believed by the jurors, would have supported only an acquittal.").

Additionally, there is no evidence in the record to support the theory that Davila's assailant did not intend to kill Davila.[12] Martinez and Fernandez testified that they heard multiple gunshots fired by the assailant. The police found eight cartridge casings in Davila's truck after it was recovered. Appellant did not introduce any evidence at trial. Specifically, he did not produce any evidence to

---

[12] We refer to Davila's assailant because, under the law of parties, appellant can be held criminally responsible for capital murder, regardless of whether he shot Davila or a co-conspirator to the robbery shot Davila. *See* Tex. Penal Code. Ann. § 7.02(b) (Vernon 2011); *Valle v. State,* 109 S.W.3d 500, 503-04 (Tex. Crim. App. 2003) ("A defendant may be convicted of capital murder under § 7.02(b) without having the intent or actual anticipation that a human life would be taken.").

suggest that Davila's assailant fired inadvertently or intended a result other than Davila's death. We determine, on this record, that there is no evidence that would permit a jury rationally to find that Davila's assailant had the intent to commit robbery but not the intent to kill Davila. *See Threadgill*, 146 S.W.3d at 665 (trial court did not abuse its discretion in concluding that there was no evidence that would permit a jury rationally to find that appellant did not intend to kill his victim where the evidence showed that defendant ran up to a car, leaned in, and fired two shots, the second of which was into the backseat where the victim was seated); *cf. Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) ("Intent to kill may be inferred from the use of a deadly weapon in a deadly manner.").

We hold that the trial court did not err in refusing appellant's request for a jury instruction on the lesser-included offense of felony murder because there is no evidence in the record from which a rational jury could acquit appellant of capital murder while convicting him of felony murder. *See Threadgill*, 146 S.W.3d at 665. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's three issues, we affirm the trial court's judgment.

/s/     William J. Boyce
Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Publish — Tex. R. App. P. 47.2(b).