**Affirmed and Memorandum Opinion filed August 30, 2018.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00174-CR

_____

**ABELARDO NARVAEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1492428**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Abelardo Narvaez of murder and sentenced him to 99 years' confinement. Appellant asserts that the trial court erred by (1) overruling his objections to the admission of extraneous offense evidence; and (2) denying his request to impeach a witness with an out-of-court statement. For the reasons below, we affirm.

### BACKGROUND

Houston police officers arrived at an America's Best Value Inn in north Houston

at approximately 5:30 a.m. on December 19, 2015, responding to a report of a stabbing. The officers found complainant Monica Balderas lying in the third-floor walkway covered in blood. Complainant had been stabbed and died before the officers' arrival at the scene. The officers arrested appellant and charged him with murder. *See* Tex. Penal Code Ann. § 19.02 (Vernon 2011).

Appellant pleaded not guilty and proceeded to trial in February 2017. The following individuals testified at appellant's trial:

- Complainant's two sons, Brandon and Martin, who were present when complainant was stabbed;

- a witness who was staying at the America's Best Value Inn when complainant was stabbed;

- a witness who saw appellant and complainant at a party hours before complainant was stabbed;

- three Houston police officers who responded to the scene;

- the crime scene investigator;

- Deputy Chief Medical Examiner Dr. Dwayne Wolf; and

- appellant.

Relevant portions of the witnesses' testimony are summarized below.

Brandon was 16 years old at the time of the incident. Brandon testified that he, Martin, and complainant had been staying at the America's Best Value Inn for several days; the family was occupying a two-room suite linked by a doorway. Brandon, Martin, and complainant recently had been living with the complainant's mother, but the complainant's mother had asked them to leave because "she didn't want [appellant] coming around no more." Brandon testified that complainant and appellant had been seeing each other "on and off for about a year and a half."

On the evening of December 18, 2015, appellant and complainant left the America's Best Value Inn to go "eat and go to the club to watch the game." Appellant

2

and complainant invited Brandon and Martin to accompany them, but the boys declined. Brandon stated that appellant and complainant returned to the hotel room at around 2:00 a.m. or 3:00 a.m.

Brandon testified that he woke up a short time later when he heard complainant screaming. Brandon walked into the adjoining room and saw appellant with "his hands around [complainant's] neck;" complainant and appellant "were arguing and about to fight." Brandon separated appellant and complainant; Brandon and complainant repeatedly told appellant to leave. Appellant refused to leave and Martin called the police.

Brandon stated that appellant "didn't want to get out" and retrieved two knives from the kitchen. Brandon testified that appellant stabbed complainant in the neck as she walked through the doorway separating the adjoining rooms. Brandon and Martin ran up to separate appellant and complainant. Martin dragged complainant out of the room and into the walkway; Brandon continued to struggle with appellant. While waiting for police to arrive, Brandon and Martin barricaded appellant in the hotel room. Brandon testified that appellant was "begging" the boys to "let him leave the hotel."

Appellant's counsel cross-examined Brandon with respect to what Brandon told police officers shortly after the incident. Brandon acknowledged he told the officers that, while appellant was barricaded in the hotel room, appellant told the boys, "I'm sorry, I'm sorry, I didn't mean to do it[.]"

Martin testified to a sequence of events similar to that described by Brandon. Martin was 18 years old at the time of the incident. Martin recalled hearing appellant and complainant return to the hotel room around 3:00 a.m. or 4:00 a.m. on December 19, 2015. Martin "started to doze off" and was awakened when he heard complainant "gasping for air;" Martin walked into the adjoining room and saw appellant "had [complainant] by the throat."

3

After the boys separated appellant and complainant, Martin testified that they told appellant to leave. Stating that appellant "looked like he was just ready to fight," Martin testified that appellant "said he wasn't going to leave." Martin "heard the kitchen knives rattle" and saw appellant "rush[] towards" complainant "swinging the knives at her." Martin and Brandon ran towards appellant to "try[] to get the knives away;" appellant continued to swing the knives at the boys. Martin was unsure of when complainant was stabbed but noticed she was bleeding while the boys were struggling with appellant. Martin testified that he and Brandon continued to subdue appellant and "beat him up." Martin dragged complainant out of the hotel room and "started running down the hall, screaming for help."

Officer Jonathan Garza, Sergeant Arthur Semein, and Lieutenant Christopher Hassig responded to the incident. According to Officer Garza, when he arrived at the scene he saw complainant laying in the walkway covered with blood. Officer Garza spoke to Brandon and Martin; he described them as "shocked," "angry," and "sad, obviously, for what happened to their mom."

Officer Garza looked in the hotel room's window and saw appellant "pacing around the room." Officer Garza and Sergeant Semein entered the hotel room and detained appellant. Sergeant Semein testified that appellant was cooperative and followed the officers' commands. Describing the condition of the hotel room, Officer Garza testified that "there was blood everywhere, on the bed, on the floor, it was on the walls." Lieutenant Hassig testified that "[t]here were broken knives, broken kitchen utensils, broken glass, clothes, phones, you know, bed linens, just all thrown about the room."

Appellant was transported to the hospital and treated for his injuries. Appellant remained at the hospital for two to three hours and received staples and stitches.

Lieutenant Hassig interviewed Brandon, Martin, and appellant hours after the

4

incident. Lieutenant Hassig testified that Brandon's and Martin's statements were "fairly consistent" and were consistent with the evidence recovered from the scene. Describing his interview with appellant, Lieutenant Hassig stated that appellant:

> [W]ent from he didn't remember [what happened] to that he was defending himself and that [complainant] attacked him and then the boys ganged up on him and that he was merely defending himself.

Appellant told Lieutenant Hassig that he retrieved the knives from the kitchen because "he was trying to defend himself" and he "was just trying to leave."

Appellant also testified at trial. Appellant said he first dated complainant in 1996 and stated that they "would separate sometimes and then [they] would get back together again." Appellant and complainant had moved in together in December 2012.

When they were returning to the America's Best Value Inn the morning of December 19, 2015, appellant testified that complainant "started to tell me that we should go out to continue drinking" and that complainant "got a little upset" when appellant said he wanted to return to the hotel room. Once they returned to the hotel room, appellant testified that complainant "got angry and started arguing a little bit more loudly." Appellant said that complainant started cursing at him and grabbed him by the genitals.

Appellant testified that he told complainant, "Just let me go so that the kids don't get up and see us fighting" but complainant refused to let him leave. Appellant said complainant "got angrier" and "scratched [his] face with both her hands." Appellant pushed complainant away and she fell on the ground, which angered Brandon and Martin. Appellant testified that Brandon and Martin began beating him up; appellant grabbed two knives "to scare [Brandon and Martin] so that they would stop beating me." Appellant said he held the knives to defend himself and was unaware that complainant had been stabbed.

5

Dr. Wolf testified with respect to complainant's autopsy. Dr. Wolf said that complainant had numerous sharp-force injuries, including a three-inch deep wound on her neck. Complainant also had sharp-force injuries on her left hand and left wrist. Dr. Wolf testified that, "in general, wounds of the hands, forearms and wrists . . . are considered defense-type injuries because they're the kind of wounds that people tend to get if they're fending off an assailant." Dr. Wolf stated that complainant also had several bruises on her head.

Following the close of evidence, the jury returned a verdict finding appellant guilty of murder. The jury sentenced appellant to 99 years' confinement. Appellant timely appealed.

**ANALYSIS**

Appellant asserts that the trial court erred by (1) overruling his objections to the admission of extraneous offense evidence; and (2) denying his request to impeach Brandon with Brandon's out-of-court statement to the police officers. We address these issues below.

## I. Admission of Extraneous Offense Evidence

Martin testified with respect to an extraneous offense committed by appellant on May 17, 2015. On this date, Martin, Brandon, and their two brothers were living with complainant at a house in Houston. Martin and complainant were cleaning the house when appellant came over and "bang[ed] at the door, screaming for [them] to open the door." Martin and complainant did not allow appellant to enter the house.

Martin testified that appellant tried to enter the house through a bedroom window; appellant broke the bedroom window and pushed in an air conditioning unit. Martin and complainant put a chair in front of the window to prevent appellant from entering. Appellant took a screwdriver from his vehicle and returned to the window;

6

Martin testified that appellant "pointed at me and [complainant] and he just, like, made signs where he was going to stab her." When asked to demonstrate appellant's gestures, Martin "pretend[ed] to have a screwdriver in his hand" and "pretend[ed] to push that screwdriver into his own neck." Martin testified that appellant said "he was going to come kill us, come back for us."

The trial court initially heard this evidence at a hearing held outside of the jury's presence. Arguing that the evidence was inadmissible, appellant asserted that "admission of the — these extraneouses would only confuse the jury;" the evidence was "highly prejudicial;" and it was "not relevant to what may have occurred [in] this case."[1] The trial court overruled appellant's objections.

Appellant asserts that this extraneous offense evidence was admitted in violation of Texas Rules of Evidence 403 and 404(b).

### A. Standard of Review and Applicable Law

We review a trial court's ruling on the admissibility of extraneous offense evidence for an abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Leassear v. State*, 465 S.W.3d 293, 303 (Tex. App.—Houston [14th Dist.] 2015, no pet.). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion and we will uphold the trial court's ruling. *Leassear*, 465 S.W.3d at 303. We may affirm the trial court's ruling if it was correct on any legal theory applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

---

[1] Appellant's objections at the evidentiary hearing preserved his Rule 403 objection. *See* Tex. R. Evid. 403; *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellant's objections also preserved his Rule 404(b) argument. A general "relevance" objection will preserve a Rule 404(b) complaint regarding an extraneous act as long as the parties describe the evidence as "extraneous" during the discussion. *Lopez,* 200 S.W.3d at 251.

Texas Rule of Evidence 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). Extraneous offense evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. 404(b)(2).

Article 38.36 of the Texas Code of Criminal Procedure states in relevant part:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex. Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2018). Evidence admissible under Article 38.36 still must meet the requirements of the rules of evidence. *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999).

Rule 403 permits the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Extraneous offense evidence is admissible under Rules 403 and 404(b) if the evidence satisfies a two-pronged test: (1) the extraneous offense evidence is relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character; and (2) the probative value of the evidence is not substantially outweighed by unfair prejudice. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Leassear*, 465 S.W.3d at 303.

To determine whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, we consider the following factors:

(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Jackson v. State*, 491 S.W.3d 411, 422-23 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

## B.    Relevance

Appellant asserts that Martin's testimony with respect to the May 17, 2015 incident is "character conformity evidence" that has "no logical relevance to the stabbing of the complainant." The State responds that the evidence rebutted a defensive theory and illustrated the prior relationship between appellant and complainant.

Extraneous offense evidence is admissible to rebut a defensive theory raised by the State's witnesses during cross-examination. *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994)). To raise a defensive theory sufficient to open the door to the introduction of extraneous offense evidence, the cross-examination must undermine the State's evidence and place in controversy a fact that the State was attempting to prove. *Id*. When defense counsel's cross-examination elicits a theory that puts at issue the defendant's intent to commit the charged offense, extraneous offense evidence may be admitted to refute it. *See Tibbs v. State*, 125 S.W.3d 84, 89 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (defendant charged with murder and aggravated assault; State allowed to introduce evidence of the defendant's gang membership to rebut claim of self-defense).

Further, "in cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible." *Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006) (discussing Tex. Code Crim. Proc. Ann. art.

38.36(a)).  In *Garcia*, the defendant was convicted of murdering his wife.  *Id.* at 697.  The court of appeals determined the trial court erred when it admitted evidence of an earlier incident in which the defendant pushed his wife out of a car; the incident occurred approximately eighteen months before the murder.  *Id.* at 697-98.  Reversing the court of appeals' judgment, the Court of Criminal Appeals held that evidence of the earlier incident was "relevant to circumstances surrounding [the parties'] relationship immediately preceding the murder."  *Id.* at 703-04; *see also Harris v. State*, No. 14-16-00282-CR, 2018 WL 1004879, at *5 (Tex. App.—Houston [14th Dist.] Feb. 22, 2018, no pet.) (mem. op., not designated for publication) (in capital murder case, the trial court did not abuse its discretion in admitting evidence that showed the defendant relied financially on the complainants and that "their relationship was deteriorating or the parties had become estranged").

The trial court's decision to admit the May 17, 2015 incident as an extraneous offense does not fall outside the zone of reasonable disagreement.  This evidence rebutted a defensive theory raised by the defense during Brandon's cross-examination.  The following exchange occurred when the defense questioned Brandon about appellant's statements made while Brandon and Martin barricaded appellant in the hotel room:

> Q.    Also, you had mentioned that when you were, as you put it, detaining [appellant], he was asking for mercy; is that correct?
>
> A.    Yes.
>
> Q.    And, in fact, when you had that interview with the police officer, did he not say, I'm sorry, I'm sorry, I didn't mean to do it?
>
> A.    He meant to do it.
>
> Q.    . . . Did he say, I'm sorry, I'm sorry, I didn't mean to do it?
>
>                \*          \*          \*
>
> A.    Yes.

Q.   And that's what you told the police officers, correct?

A.   Yes.

The jury was instructed that it could find appellant guilty of murder if it determined that appellant "intentionally or knowingly cause[d] the death of [complainant]" or "intend[ed] to cause serious bodily injury to [complainant], and did cause the death of [complainant] by intentionally or knowingly committing an act clearly dangerous to human life . . . ." The defense's cross-examination of Brandon placed in controversy appellant's intent to commit the charged offense and suggested that appellant "didn't mean to do it." The State was permitted to introduce extraneous offense evidence to refute this defensive theory and show that appellant possessed the requisite intent. *See Bargas*, 252 S.W.3d at 890; *Tibbs*, 125 S.W.3d at 89.

Evidence of the May 17, 2015 incident also was relevant to illustrate the nature of the relationship between appellant and complainant. *See Garcia*, 201 S.W.3d at 704; *Harris*, 2018 WL 1004879, at *5. Like the incident in *Garcia*, the May 17, 2015 incident was "relevant to circumstances surrounding [the parties'] relationship immediately preceding the murder." *See Garcia*, 201 S.W.3d at 704.

The trial court acted within its discretion in concluding that evidence of the May 17, 2015 incident was relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character. *See Page*, 213 S.W.3d at 336; *Leassear*, 465 S.W.3d at 303.

### C.   Probative Value

Analyzing the four factors discussed in *State v. Mechler*, appellant asserts that the probative value of the extraneous offense evidence is substantially outweighed by the danger of unfair prejudice. We disagree and conclude that the four factors do not weigh in favor of excluding the challenged evidence.

With respect to the first factor, appellant contends that the extraneous offense "was not relevant to an issue in the case." But evidence that tends to rebut a defensive theory is probative of determinative issues in a case. *See Grant v. State*, 475 S.W.3d 409, 420-21 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Bargas*, 252 S.W.3d at 893. As discussed above, defense counsel's cross-examination of Brandon placed in controversy appellant's intent to commit the charged offense. Evidence refuting this theory was relevant to prove appellant's intent.

For the second factor, appellant does not explain how the May 17, 2015 incident had potential to impress the jury "in some irrational, yet indelible, way." *See Mechler*, 153 S.W.3d at 440. Although the evidence likely carried some emotional weight, appellant provides no reason to conclude that it would lead the jury to decide the case on an improper basis.

Addressing the third factor, the time needed to develop the evidence does not weigh in favor of exclusion. Appellant's trial spanned five days; Martin's testimony discussing the May 17, 2015 incident required only five pages of testimony.

Finally, the State needed the evidence to address an issue in dispute, namely, appellant's intent to commit the charged offense. Brandon's, Martin's, and appellant's testimony differed with respect to complainant's stabbing. Brandon and Martin testified that appellant intended to stab complainant; appellant suggested it was an accident that occurred while he was defending against Brandon's and Martin's attacks. The extraneous offense provided additional evidence relevant to show appellant's intent. This factor weighs in favor of admission. *See Sanchez v. State*, 444 S.W.3d 215, 221-22 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (where the challenged evidence rebutted the defendant's defensive theory, "the State's need for the evidence was great").

The four *State v. Mechler* factors do not weigh against admission of the

12

extraneous offense evidence. Overruling appellant's first issue, we conclude the trial court did not abuse its discretion in admitting evidence of the May 17, 2015 incident.

## II.    Witness Impeachment

Appellant's second issue addresses Brandon's testimony with respect to complainant's statements to Brandon after Brandon saw appellant with "his hands around [complainant's] neck" shortly before complainant was stabbed. Defense counsel cross-examined Brandon as follows.

| | |
|---|---|
| [Defense Counsel] | Okay. And at that point [complainant] tells you, He didn't hurt me, correct? |
| [Brandon] | Yes. |
| [Defense Counsel] | She said, He didn't hit me, correct? |
| [Brandon] | No. |
| [Defense Counsel] | That's what [complainant] said. He didn't — did you not tell the police officer — |
| [State] | Objection, that's hearsay. |
| [Court] | Overruled. |
| [Defense Counsel] | Did you not tell the police officers during the interview that [complainant] said — |
| [State] | Objection, hearsay. |
| [Defense Counsel] | — didn't hurt him [sic], didn't — |
| [Court] | Y'all come on up. |

At the bench, defense counsel and the State discussed with the trial court the State's hearsay objection. The trial court sustained the State's objection and instructed defense counsel to "not impeach[] [Brandon] with what he told the cops [complainant] said . . . ."

Appellant contends that the trial court erred when it sustained the State's objection and denied appellant's attempt to impeach Brandon with an out-of-court

13

statement Brandon made to the police officers. The State asserts in response that appellant failed to preserve his complaint for appeal.

A defendant who seeks to cross-examine a State's witness regarding the credibility of the witness's testimony must preserve error according to Texas Rule of Evidence 103(a)(2). *Allen v. State*, 473 S.W.3d 426, 451 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd) (citing *Holmes v. State*, 323 S.W.3d 163, 169 (Tex. Crim. App. 2009)).[2] Error is preserved by (1) calling the witness to the stand outside the presence of the jury and asking specific questions; or (2) making an offer of proof demonstrating what questions would have been asked and the expected answers to those questions. Tex. R. Evid. 103; *Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

The record shows that appellant did not preserve this point of error for our review. Brandon was not questioned outside the jury's presence with respect to complainant's statements. Appellant did not make an offer of proof showing Brandon's out-of-court statements or the testimony he sought to elicit from Brandon on this topic. Because the record does not show what evidence the trial court's ruling excluded, we cannot determine whether the trial court erred and whether this error was harmful. *See* Tex. R. Evid. 103; *Allen*, 473 S.W.3d at 451.

We overrule appellant's second issue.

---

[2] In contrast to a challenge aimed at specific testimony, when a defendant seeks to cross-examine a State's witness with respect to the witness's own credibility, the defendant need only show "'what general subject matter he desire[s] to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence.'" *Allen*, 473 S.W.3d at 451 (quoting *Holmes*, 323 S.W.3d at 168). A "witness's credibility" refers to personal characteristics of the witness such as malice, ill feeling, ill will, bias, or prejudice. *Id*. Here, appellant sought to challenge the credibility of the witness's testimony, which refers to the substance of the evidence rather than the witness's personal characteristics. *Id*.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

/s/ William J. Boyce
   Justice

Panel consists of Justices Boyce, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).