**Opinion filed April 7, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00310-CR
_____

## ROCKY DEE HIDROGO, JR., Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CCCR-08-03104**

## M E M O R A N D U M   O P I N I O N

The jury convicted Rocky Dee Hidrogo, Jr. of the offense of capital murder for killing Glenn Bundy while in the course of burglarizing his home. The State waived the death penalty, and the trial court assessed appellant's punishment at confinement for life without parole. We affirm.

Appellant does not challenge the sufficiency of the evidence. The evidence showed that, on July 5, 2008, Eddie Ray Jr. and appellant committed five burglaries in the rural area near the victim's house. Eddie testified at trial and admitted he was involved in the burglaries, including the burglary of the victim's house. Eddie said he dropped appellant off outside the houses, left, and came back to pick appellant up a short while later. When Eddie picked appellant up from

the victim's house, appellant had a shotgun and a .32 caliber revolver, which he had taken from the victim's home. Appellant told Eddie that he had shot and killed a man in that house. The victim was later found lying in his bed with a single gunshot wound to the head from a .32 caliber bullet. Crime scene evidence revealed that the victim was asleep when he was shot. A shotgun identified by serial number as the victim's missing shotgun was recovered after Eddie led police to the location where Eddie had discarded it.

On appeal, appellant presents four issues – all challenging evidentiary rulings made by the trial court. A trial court's ruling admitting or excluding evidence is reviewed on appeal for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). The ruling will be upheld on appeal if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.*

In his first issue, appellant contends that the trial court abused its discretion in excluding evidence of text messages that pointed to a third party as the killer. The text messages that appellant sought to introduce had been sent to appellant's wife's niece, Paige Clark, from a phone belonging to Ryleigh LeFlame. According to Clark's mother, who is appellant's sister-in-law, the text messages from LeFlame stated that Brian Ray, Eddie's brother, had claimed some involvement with Eddie in the victim's murder. Clark testified that, in one of the messages, LeFlame stated that Brian had told her "that he was there that day and he shot the dude." Appellant attempted to introduce evidence of the text messages through various witnesses who had read the messages. The State objected on hearsay grounds, and the trial court sustained the objections.

Citing *Chambers v. Mississippi*, 410 U.S. 284 (1973), and *Miller v. State*, 36 S.W.3d 503 (Tex. Crim. App. 2001), appellant asserts that the exclusion of the exculpatory text-message evidence denied him the ability to present a defense at trial. We disagree. First, we note that the courts in both cases recognized that a defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established rule of procedure or evidence designed to assure fairness and reliability. *Chambers*, 410 U.S. at 302; *Miller*, 36 S.W.3d at 507. The Court in *Chambers* determined that the hearsay rule may not be applied mechanistically to defeat the ends of justice. 410 U.S. at 302. The Court held that Chambers was denied a fair trial by the exclusion of hearsay that constituted a declaration against penal interest (though Mississippi had no hearsay exception for declarations against penal

interest at that time) and bore persuasive assurances of trustworthiness. *Id.* at 299, 302. In the present case, the text messages were double hearsay, and the proposed testimony of Clark and others who read the messages bore no such assurance of trustworthiness.

Second, the application of the hearsay rule to the present case did not deny appellant the opportunity to present his defense. Had appellant sought to introduce Brian's out-of-court statements through LeFlame, the evidence would have been admissible under TEX. R. EVID. 803(24) as statements against interest. The trial court permitted Leonard Stockinger to testify that he was at LeFlame's house and heard Brian admit to being present when the victim was murdered. According to Stockinger, Brian said he was with Eddie and appellant at the time of the offense, but Brian did not say he shot the victim – only that he spit on the victim. However, there was no such hearsay exception available for the testimony of witnesses such as Clark and her mother because they did not hear Brian's out-of-court statements; they merely read LeFlame's text messages about Brian's statements and attempted to testify regarding the content of LeFlame's out-of-court statements. Appellant was not denied the ability to present a defense; he could have called LeFlame as a witness. We hold that the trial court did not abuse its discretion in excluding the hearsay testimony regarding the text messages. Appellant's first issue is overruled.

In the second issue, appellant argues that the trial court abused its discretion in excluding evidence concerning the victim's "involvement with women's underwear, condoms, and pornographic movies." Appellant asserts that the excluded evidence tended to show that the victim had a secret life, that something other than burglary was possibly involved, and that somebody else committed the murder. Nothing in the record suggests that the excluded evidence was relevant to the burglary or the victim's death. Neither the victim's character nor his alleged secret life was shown to be relevant to this case. The trial court did not abuse its discretion in excluding such evidence. *See* TEX. R. EVID. 401, 402, 404(a). Moreover, the trial court permitted appellant to introduce evidence that the victim was clad only in pink panties at the time of his death, and even though the trial court had ruled that the other evidence was not admissible, Texas Ranger Jess Ramos subsequently testified in the jury's presence that he collected condoms and "porn" videotapes from the victim's house. Appellant's second issue is overruled.

In his third issue, appellant contends that the trial court abused its discretion in admitting into evidence a recording of the sheriff's interview of appellant, which contained evidence of

four extraneous burglaries. During his interview, appellant admitted committing four extraneous burglaries, but he denied any involvement with the burglary or murder at the victim's house. Appellant objected that the extraneous offense evidence was inadmissible under TEX. R. EVID. 404(b).

When appellant made his objection, other witnesses had already testified about the extraneous offenses. The sheriff had testified that numerous items stolen during the extraneous burglaries were found during a search of appellant's residence. Brian had testified that Eddie and appellant were in possession of stolen items on the night of the offense. Eddie had testified in detail about the events of that night, which included a total of five burglaries, and appellant's involvement in those burglaries. Because appellant did not object to the earlier testimony regarding the extraneous burglaries, appellant waived this issue. *See* TEX. R. APP. P. 33.1; *Etheridge v. State*, 903 S.W.2d 1, 14 (Tex. Crim. App. 1994).

Furthermore, the trial court did not abuse its discretion in determining that evidence of the other burglaries was admissible under Rule 404(b). Under Rule 404(b), evidence of an extraneous offense is inadmissible to show action in conformity with bad character, but it may be admissible for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. When identity is an issue, as it was in this case, extraneous offense evidence may be admitted to prove identity if the extraneous offense is so similar to the offense at issue that the offenses are marked as the accused's handiwork. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). Sufficient similarity may be shown by proximity in time and place *or* by a common mode of committing the offenses. *Id.* In this case, the burglaries were committed on the same evening as the present offense in a rural area in close proximity to the victim's house. All five entries were similar, and none of the houses were ransacked. The offense at issue and the extraneous offenses were sufficiently similar for the trial court to admit the extraneous offense evidence to prove identity. *See Harvey v. State*, 3 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Appellant's third issue is overruled.

In his final issue, appellant argues that the trial court abused its discretion in admitting DNA evidence that was not shown to be sufficiently reliable. We disagree. In its position as the gatekeeper of scientific evidence, the trial court has discretion in determining the relevance and reliability of expert testimony. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).

When the subject of the expert's testimony is "hard" scientific knowledge, the basis of that testimony must be grounded in accepted methods and procedures of science and meet three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Kelly*, 824 S.W.2d at 573.

The record shows that the trial court conducted a hearing outside the jury's presence to determine the admissibility of the testimony of the State's DNA expert, Brent Wayne Watson. At the hearing, Watson, who is a forensic scientist in the DNA unit of the Texas Department of Public Safety crime lab in Waco, testified regarding his qualifications and experience in analyzing DNA evidence. Watson testified that he used the STR technique for DNA analysis, that the STR technique was recognized as scientifically valid by an overwhelming majority in that field, that he ran two tests in this case using commercial kits based upon the STR technique, and that all procedures and protocols were followed in this case. Watson testified that the kits have been validated by the DPS for use in all types of DNA samples, including samples like the one in the present case where there is a low quantity of DNA present in the sample. According to Watson, the DNA analysis in this case met the threshold required for validation. At the conclusion of the hearing, the trial court ruled that Watson's testimony would be permitted.[1] We find no abuse of discretion in this ruling because the State met its burden under *Kelly*. Appellant's fourth issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT

April 7, 2011                                                   CHIEF JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Strange, J., and Hill, J.[2]

---

[1] Watson subsequently testified that the DNA sample in question was obtained from a blood smear on a water filtration unit that was inside the bathroom where the perpetrator had apparently entered the house through a window. The results of Watson's tests revealed that the probability of someone other than appellant being the contributor of the DNA was one in 825.8 million Caucasians, one in 10.35 billion Blacks, and one in 15.52 billion Hispanics.

[2] John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.