**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

9/29/15

**DORIAN E. RAMIREZ, CLERK**
**BY** DTello

ACCEPTED
13-15-00010-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/29/2015 10:24:34 AM
Dorian E. Ramirez
CLERK

## No. 13-15-00010-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/29/2015 10:24:34 AM
DORIAN E. RAMIREZ
Clerk

# PAULO TREVINO,
# APPELLANT,

## v.

# THE STATE OF TEXAS,
# APPELLEE.

ON APPEAL FROM THE 214TH DISTRICT COURT
NUECES COUNTY, TEXAS

## BRIEF FOR THE STATE

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

Attorney for Appellee

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................. iii

SUMMARY OF THE ARGUMENT .......................................................... 1

ARGUMENT ............................................................................... 2

**Reply Point No. 1**
**The trial court properly denied Trevino's challenge to evidence of the extraneous liquor store robbery.** ................................................. 2

    **I. Statement of Facts.** ............................................................ 2
    **II. Partial and Complete Waiver.** ........................................... 5
    **III. Standard of Review.** ......................................................... 8
    **IV. Identity as an Exception to Rule 404(b).** ........................ 8
    **V. Rule 403 Balancing.** ......................................................... 12
    **VI. Harmless Error.** .............................................................. 15

**Reply Point No. 2**
**The trial court properly allowed DNA evidence and overruled Trevino's chain-of-custody objection.** ........................................ 17

    **I. Statement of Facts.** ............................................................ 17
    **II. Waiver.** ............................................................................. 19
    **III. Chain of Custody And Authentication.** ............................ 20

**Reply Point No. 3**
**The trial court properly allowed the State to prove up Trevino's prior convictions by testimony establishing Trevino's admission to those prior convictions.** ......................................................................... 24

    **I. Statement of Facts.** ............................................................ 25
    **II. Proving Prior Convictions.** ............................................... 26

**Reply Point No. 4**
**There is no requirement that the Defendant affirmatively waive on the record his right to testify in his own defense.** ............................. 27

PRAYER .......................................................................................... 28

RULE 9.4 (i) CERTIFICATION .................................................. 29

CERTIFICATE OF SERVICE .................................................... 29

# INDEX OF AUTHORITIES

## Cases

*Acosta v. State*, 429 S.W.3d 621 (Tex. Crim. App. 2014). ......................... 23

*Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007). ...................... 23

*Cain v. State*, 549 S.W.2d 707 (Tex. Crim. App. 1977)...................................6

*Casey v. State,* 215 S.W.3d 870 (Tex. Crim. App. 2007)............................ 15

*Castillo v. State,* 865 S.W.2d 89 (Tex.App.—Corpus Christi 1993, no pet.). 7

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010)......................... 7, 19

*Critchfield v. Smith,* 151 S.W.3d 225 (Tex. App.-Tyler 2004, pet. denied). ..6

*Davis v. State,* 329 S.W.3d 798 (Tex. Crim. App. 2010). ............................ 13

*De La Paz v. State,* 279 S.W.3d 336 (Tex. Crim. App. 2009). .......................8

*Dossett v. State*, 216 S.W.3d 7 (Tex. App.--San Antonio 2006,
pet. ref'd). ...................................................................................... 21, 22

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007)..................... 20, 22

*Durrett v. State*, 36 S.W.3d 205 (Tex. App.--Houston [14th Dist.] 2001, no
pet.). ...................................................................................................... 21

*Erazo v. State,* 144 S.W.3d 487 (Tex. Crim. App. 2004)............................ 13

*Etheridge v. State,* 903 S.W.2d 1 (Tex. Crim. App. 1994)...................... 7, 19

*Flowers v. State*, 220 S.W.3d 919 (Tex. Crim. App. 2007). ....................... 26

*Ford v. State*, 26 S.W.3d 669 (Tex. App.--Corpus Christi 2000, no pet.). .. 22

*Gamboa v. State,* 296 S.W.3d 574 (Tex. Crim. App. 2009)................... 13, 16

*Gillette v. State*, 444 S.W.3d 713 (Tex. App.—Corpus Christi 2014,
no pet.). .......................................................................... 8, 13, 14

*Haley v. State,* 173 S.W.3d 510 (Tex. Crim. App. 2005)............................ 16

*Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643 (1971). ............................ 27

*Harvey v. State*, 3 S.W.3d 170 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). .................................................................................. 11

*Heigelmann v. State*, 362 S.W.3d 763 (Tex. App.—Texarkana 2012, pet. ref'd). .................................................................................. 10

*Hidrogo v. State*, 352 S.W.3d 27 (Tex. App.—Eastland 2011, pet. ref'd)... 10

*Johnson v. State,* 169 S.W.3d 223 (Tex. Crim. App. 2005). ................... 27, 28

*Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App. 1997)................... 21, 22

*Lane v. State,* 933 S.W.2d 504 (Tex. Crim. App. 1996). ........................ 9, 10

*Leassear v. State*, 465 S.W.3d 293 (Tex. App.—Houston [14th Dist.] 2015, no pet.). ............................................................................ 9, 10

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998)........................ 7, 19

*Miller v. State*, 33 S.W.3d 257 (Tex. Crim. App. 2000). ............................ 26

*Montgomery v. State,* 810 S.W.2d 372 (Tex. Crim. App. 1991). .......... 5, 7, 13

*Morales v. State*, 222 S.W.3d 134 (Tex. App.—Corpus Christi 2006, no pet.). ........................................................................................ 5, 8

*Mosley v. State*, 490 S.W.2d 842 (Tex. Crim. App. 1973)............................6

*Page v. State,* 137 S.W.3d 75 (Tex. Crim. App. 2004). ................................9

*Page v. State,* 213 S.W.3d 332 (Tex. Crim. App. 2006). ........................ 9, 10

*Paschall v. State*, 285 S.W.3d 166 (Tex. App.—Fort Worth 2009, pet. ref'd). ................................................................................... 26

*Penley v. State*, 2 S.W.3d 534 (Tex. App.--Texarkana 1999, pet. ref'd). ........................................................................... 21, 22

*Price v. State*, 351 S.W.3d 148 (Tex. App.—Fort Worth 2011, pet. ref'd). .................................................................................. 9, 14

*Ransom v. State,* 503 S.W.2d 810 (Tex. Crim. App. 1974). ...................... 10

*Salinas v. State*, 163 S.W.3d 734 (Tex. Crim. App. 2005)..................... 27, 28

*Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008)......................... 8-12

*Smith v. State*, 286 S.W.3d 333 (Tex. Crim. App. 2009). ............................ 27

*Smith v. United States*, 343 F.2d 539 (5th Cir. 1965).................................. 23

*Stoker v. State*, 788 S.W.2d 1 (Tex. Crim. App. 1989). ........................ 21, 22

*Thomas v. State,* 750 S.W.2d 234 (Tex. App.-Dallas 1986, no pet.). .............6

*Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App. 2012). .......................... 21

*Turner v. State,* 733 S.W.2d 218 (Tex. Crim. App. 1987). .......................... 26

*Valle v. State,* 109 S.W.3d 500 (Tex. Crim. App. 2003)........................... 7, 19

*West  v. State*, 846 S.W.2d 912 (Tex. App.—Beaumont 1993, pet. ref'd). .. 23

*Young v. State,* 283 S.W.3d 854 (Tex. Crim. App. 2009). ........................... 13

## Statutes & Rules

Tex. R. Evid. 403. ............................................................................... 5, 12

Tex. R. Evid. 404. ....................................................................................5

Tex. R. Evid. 901................................................................................ 20

Tex. R. App. P. 33.1. ............................................................................. 24

Tex. R. App. P. 44.2. ............................................................................. 15

NO. 13-15-00010-CR

| PAULO TREVINO, | § | COURT OF APPEALS |
| Appellant, | § | |
| | § | |
| V. | § | FOR THE THIRTEENTH |
| | § | |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | DISTRICT OF TEXAS |

## BRIEF FOR THE STATE

TO THE HONORABLE COURT OF APPEALS:

## SUMMARY OF THE ARGUMENT

*First Ground* – The trial court properly determined that evidence of the recent and similar liquor store robbery was relevant under Rule 404(b) to show identity, and not so prejudicial as to require exclusion under Rule 403.

*Second Ground* – The State properly authenticated the chain of custody of the clothing sent for DNA testing by the testimony of the officer who discovered the discarded clothing and observed its collection, as well as testimony by a detective and other officials concerning the procedures for collecting tagging and submitting such items for testing and that those procedures were followed in the present case.

*Third Ground* – Trevino's own prior admission provided sufficient evidence to link him to a prior conviction and support his punishment as a repeat felony offender.

*Fourth Ground* – The trial court had no duty to ascertain whether the defendant affirmatively waived his right to testify at trial; rather, the defendant must affirmatively assert this right at trial in order to complain on appeal that he was denied the right to testify.

## ARGUMENT

### Reply Point No. 1
**The trial court properly denied Trevino's challenge to evidence of the extraneous liquor store robbery.**

### I. Statement of Facts.

Trevino was indicted for Aggravated Robbery based on an October 12, 2012, theft, with use of a firearm as a deadly weapon as the aggravating element. (CR p. 6)

In his opening statements to the jury, Trevino's attorney suggested that the evidence showing the robber running from the scene would be inconsistent with Trevino's medical condition and need for a hip replacement. (RR vol. 2, pp. 15-16)

During the presentation of the State's case, Bank Teller Yvette Garcia was asked on cross-examination whether she could identify Trevino as the robber and admitted that she could not. (RR vol. 2, p. 45)  Similarly, the defense elicited testimony on cross-examination of numerous other witnesses that they could not identity Trevino as the bank robber.  (RR vol.

2

2, pp. 70, 84; RR vol. 3, pp. 21, 33-34)  In addition, Detective Rodney Cantu admitted on cross-examination that he had no personal knowledge that Trevino was the robber.  (RR vol. 3, p. 56)

At a bench conference during Detective Ralph Lee's testimony, the prosecutor indicated his intent to elicit testimony concerning an extraneous liquor store robbery, as follows:

> MR. GORDON: I think this is where we get into the extraneous offense of this -- of the other robbery, the liquor store robbery. I'm going to -- subject to any objection, I want to offer his – the detective's testimony as far as a similar MO where he robbed a liquor store wearing a mask, left his hat behind. They collected the hat and they did the same DNA routine with that and it also came back to him.
> MR. GONZALEZ: Judge, I'm going to object to the probative value versus the prejudicial value that the jury will be, so it would outweigh its probative value. It would make the jury so prejudiced that they would rely on that case to convict him and not on this case, on the evidence of this case.
> MR. GORDON: Judge, I'm not offering it to show that, you know, because he did it here, he did it here. I'm offering to show identity. I'm sorry.  I'm offering it to show identity which is the very issue of this case.
> THE COURT: Only for identity purposes it will be allowed.
> MR. GORDON: Okay.
> MR. GONZALEZ: And, therefore, Judge, I would urge my objection again.
> THE COURT: Your objection's overruled.
> MR. GONZALEZ: Thank you.

(RR vol. 3, pp. 75-76)

The prosecutor then elicited testimony from Detective Lee, without further objection, concerning another recent aggravated robbery in which DNA evidence had identified Trevino, as follows:

Q. (BY MR. GORDON) Okay. Detective, you were about to tell us that you had some other information that helped you solve this case?
A. Yes, sir.
Q. Okay. Tell the jury what -- what that's about.
A. I -- this case happened toward, it seems like toward the weekend. The following week, I was assigned another case.
Q. Okay.
A. Which --
Q. What kind of case?
A. Was an aggravated robbery. And when I got the video from that place, I looked at the suspect in that video. Just the general clothing, this guy was dressed head to toe, long sleeve shirt, mask, hat, clothing, same as the bank robbery. He also had the same -- the weapon looked exactly the same in the video. And from my experience on the Police Department, Corpus Christi is such a small town, when I have robberies that are like this, 9.9 times out of 10, they're going to be the same suspect, just because the way Corpus Christi is. Very, very few times where you're going to have more than one serial robber out there going in Corpus Christi at the same time.
Q. So what did you do?
A. So, I felt -- I -- well, in that particular robbery, they recovered a hat, a baseball hat. That was also sent to D.P.S. for -- for DNA testing.
Q. Okay. And did they get a match on that hat?
A. That hat was identified to Mr. Trevino before the bank robber was.
Q. Okay. So hats left behind at both scenes?
A. Yes, sir.
Q. Had his DNA?
A. Yes, sir.
Q. And you're telling us that's why -- you said you had information about this that identified him as your suspect prior to?
A. From my experience, I knew once that the -- the hat from the liquor store, which happened a week before the bank robbery happened, I knew that the suspect was going to be Mr. Trevino in both of them.

4

(RR vol. 3, pp. 76-77)

DPS Forensic Scientist Robin Castro later testified, without objection, that she obtained a DNA profile from the baseball cap submitted in the other robbery that matched Trevino. (RR vol. 3, pp. 212, 215-16)

## II. Partial and Complete Waiver.

Objections must be made both under Tex. R. Evid. 404(b) (relevance to issue other than character conformity) and under Tex. R. Evid. 403 (prejudice substantially outweighs probative value), in order to preserve error regarding the admission of evidence of an extraneous offense. *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g); *Morales v. State*, 222 S.W.3d 134, 146 (Tex. App.—Corpus Christi 2006, no pet.).

In the present case, Trevino did not raise a Rule 404(b) complaint, either by name or by implication, in his trial objection that complained *only* that the prejudice outweighed the probative value, and he did not controvert that State's assertion that the extraneous offense was relevant to show identity. Accordingly, he waived for appeal any complaint under Rule 404(b) that the evidence was not relevant to prove his identity as the robber in the present case. Without a Rule 404(b) objection, the trial court was entitled to assume that the facts of the extraneous liquor store robbery were

sufficiently similar to the present offense to make it relevant to prove identity, and this Court should make the same assumption for purposes of reviewing the Rule 403 objection and the balancing of probative value and prejudice.

In addition, for two distinct reasons, Trevino waived error on his Rule 403 complaint concerning unfair prejudice from the extraneous offense evidence.

First, premature objections do not preserve error. *See Cain v. State*, 549 S.W.2d 707, 714 (Tex. Crim. App. 1977); *Mosley v. State*, 490 S.W.2d 842, 843-44 (Tex. Crim. App. 1973); *Critchfield v. Smith,* 151 S.W.3d 225, 235 (Tex. App.-Tyler 2004, pet. denied); *Thomas v. State,* 750 S.W.2d 234, 234 (Tex. App.-Dallas 1986, no pet.).

In the present case, when Trevino objected to the prosecutor's proffer of Detective Lee's testimony concerning the other robbery to prove identity through similar modus operandi, the trial court had no context or details concerning that offense with which to make a determination concerning its relevance in identifying Trevino as the present robber, much less to balance that probative value against the potential for unfair prejudice. Trevino made no attempt to explore relevance through voir dire of the witness, nor did he renew his objection when the witness then testified and the nature of the

extraneous robbery became apparent. Accordingly, Trevino's objection was premature and preserved nothing for review. Although the Court of Criminal Appeals has said that neither party shoulders a burden to prove probative value or prejudice with regard to extraneous offense evidence, *See Montgomery,* 810 S.W.2d at 389; *Castillo v. State,* 865 S.W.2d 89, 92-93 (Tex.App.—Corpus Christi 1993, no pet.), the trial court should not be held to have committed error in its Rule 404(b) and Rule 403 determinations before the nature of the evidence in question has been fully presented to it.

Second, whether analyzed in terms of waiver, harmless error, or "cured" error, when essentially the same facts are admitted without objection, either before or after the complained-of ruling, erroneously admitted evidence will not result in reversal. *See Coble v. State,* 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Valle v. State,* 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Leday v. State,* 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998); *Etheridge v. State,* 903 S.W.2d 1, 14 (Tex. Crim. App. 1994).

In the present case, Trevino's failure to object to Castro's testimony connecting his DNA to the other robbery waived the present complaint concerning that extraneous offense.

However, even if Trevino had not waived error under either or both Rule 404(b) and Rule 403, the trial court properly allowed evidence of the extraneous robbery to prove identity.

## III. Standard of Review.

The appellate court should review the trial court's decision to admit evidence under Rules 403 and 404(b) for an abuse of discretion and uphold that ruling as long as it is within the zone of reasonable disagreement. *De La Paz v. State,* 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009); *Gillette v. State*, 444 S.W.3d 713, 733 (Tex. App.—Corpus Christi 2014, no pet.). A trial court's ruling is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344; *Gillette*, 444 S.W.3d at 733.

## IV. Identity as an Exception to Rule 404(b).

One of the main rationales for admitting extraneous-offense evidence is to prove the identity of the offender. *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008); *see also Morales v. State*, 222 S.W.3d 134, 147 (Tex. App.—Corpus Christi 2006, no pet.) (noting identity as a specific

exception to the Rule 404(b) prohibition on the use of extraneous offense evidence).

For an extraneous offense to be admissible to show identity, identity must be raised as an issue in the case. *Page v. State,* 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane v. State,* 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). However, the trial court has considerable latitude in determining that identity is, in fact, disputed, and identity may be placed in dispute by the defendant's opening statement or cross-examination as well as by affirmative evidence offered by the defense. *Segundo,* 270 S.W.3d at 86; *Page v. State,* 137 S.W.3d 75, 78 (Tex. Crim. App. 2004); *Leassear v. State*, 465 S.W.3d 293, 303 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Price v. State*, 351 S.W.3d 148, 151 (Tex. App.—Fort Worth 2011, pet. ref'd).

In the present case, Trevino clearly placed identity in issue, both by his opening statement and his cross-examination of the State's witnesses.

When identity is raised as an issue, the Court of Criminal Appeals has explained that:

> the theory of relevancy is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a "signature." Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual. No rigid rules

9

> dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person.

*Segundo*, 270 S.W.3d at 88; *see also Page,* 213 S.W.3d at 336. In earlier cases, the Court of Criminal Appeals stressed that sufficient similarity may be shown by proximity in time and place *or* by a common mode of committing the offenses. *Lane,* 933 S.W.2d at 519; *Ransom v. State,* 503 S.W.2d 810, 813 (Tex. Crim. App. 1974).

For example, in *Ransom*, the Court of Criminal Appeals held the offenses to be sufficiently similar where: (1) both offenses were robberies, (2) both offenses were committed at gunpoint, (3) the defendant was aided by a confederate, and (4) the offenses occurred three days apart. 503 S.W.2d at 813; *see also Leassear*, 465 S.W.3d at 304 (both aggravated robberies occurred within eight days of each other, involved a similar model car with similar characteristics and the defendant dressed and acted similarly in each robbery); *Heigelmann v. State,* 362 S.W.3d 763, 772 (Tex. App.—Texarkana 2012, pet. ref'd) (offenses occurred in the same geographic area within a relatively brief time frame, were committed by a lone assailant who covered his hands with socks or gloves, and whose face was completely covered by a similar covering, leaving only the eyes exposed); *Hidrogo v.*

*State*, 352 S.W.3d 27, 31 (Tex. App.—Eastland 2011, pet. ref'd) (extraneous burglaries were committed on the same evening in a rural area in close proximity to the victim's house and were committed in a similar manner to the charged offense); *Harvey v. State*, 3 S.W.3d 170, 176 (Tex. App.— Houston [14th Dist.] 1999, pet. ref'd) (all the offenses were in the same residential area, all occurred within an hour, and all were committed in a similar manner).

In the present case, the liquor store robbery occurred within a week of the charged bank robbery, in the same city, with the robber dressed in a similar manner and holding what appeared to be the same gun, and disposing of a portion of his disguise, his cap, in like manner immediately after the robbery. These details provided sufficient similarity for the trial court to have acted within its discretion in allowing evidence of the extraneous robbery to show identity.

In addition, in *Segundo*, the Court of Criminal Appeals also explained "'the mark of Zorro' mode of proving identity [consisting of ] a remarkably unusual fact, in which a single detail suffices to establish identity." 270 S.W.3d at 88. In that case, the Court characterized the DNA which the defendant left in both rape/murder victims as his "calling card" or "unique signature," and further used the doctrine of chances to explain how

implausible it would have been for the defendant to have had sexual intercourse with both victims before their deaths but not have been the one who strangled them. *Id.* at 89.

Likewise, in the present case, under the "mark of Zorro," doctrine of chances rationale for proving identity, while Trevino may have been able to credibly argue that his DNA ended up on the items in the present robbery by contamination or mistake, it becomes incredible and implausible to suggest that the same contamination or mistake occurred with regard to the cap from the recent liquor store robbery which also contained his DNA. The DNA left on both caps thus became Trevino's calling card or mark of Zorro. Accordingly, under this rationale as well, the trial court acted within its discretion in allowing evidence of the extraneous robbery to prove identity.

## V. Rule 403 Balancing.

"Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

In reviewing a Rule 403 objection, the appellate court should consider the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the

time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State,* 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *Montgomery,* 810 S.W.2d at 389–90; *Gillette v. State*, 444 S.W.3d 713, 734 (Tex. App.—Corpus Christi 2014, no pet.). Evaluation of the last factor should take into consideration: (1) whether the proponent has other available evidence to establish the fact of consequence that the evidence is relevant to show; (2) the strength of the other evidence; and (3) whether the fact of consequence is related to an issue that is in dispute. *Erazo,* 144 S.W.3d at 495–96; *Montgomery,* 810 S.W.2d at 390; *Gillette*, 444 S.W.3d at 734. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Davis v. State,* 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Montgomery,* 810 S.W.2d at 389; *Gillette*, 444 S.W.3d at 734. "It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 bars its admission." *Young v. State,* 283 S.W.3d 854, 877 (Tex. Crim. App. 2009); *Gillette*, 444 S.W.3d at 734.

In addition, though not listed as a factor, the jury is presumed to have followed an instruction by the trial court limiting its consideration of the extraneous offense to the purpose for which it was offered. *See Gamboa v.*

*State,* 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Gillette*, 444 S.W.3d at 735.

In the present case, identity was hotly contested at trial and the defense played up the fact that there were no witnesses to the charged robbery who could identify Trevino as the robber and that he supposedly had a bad hip that prevented him from running as the robber did. In spite of the fact that the State had DNA evidence, Trevino's attorney attacked that evidence based on a break in the chain of custody, possible contamination, and the presence of a mixture of someone else's DNA in the samples tested. Accordingly, the other, similar robbery was highly probative of Trevino's identity as the robber in the present case and necessary for the State's rebuttal of the defensive attacks on identity and DNA evidence. Evidence concerning the liquor store robbery "focused, rather than distracted, the jury on the main issue in the case: whether appellant was the person who committed the [charged] crime." *Price v. State*, 351 S.W.3d 148, 153-54 (Tex. App.—Fort Worth 2011, pet. ref'd). Nor did the State need an inordinate amount of time to develop evidence of the other offense.

Finally, Paragraph 8 of the guilt-innocence jury charge instructed the jury as follows:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than

14

the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a resonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the identity, motive, opportunity, intent, or plan, of the defendant, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

(CR p. 82) Accordingly, the trial court acted within its discretion in overruling Trevino's Rule 403 objection.

## VI. Harmless Error.

However, even if the trial court should have sustained the objection, evidence of the extraneous robbery was harmless.

The appellate court should review the erroneous admission of evidence concerning extraneous offenses or bad acts for harm under Texas Rule of Appellate Procedure 44.2(b). *Casey v. State,* 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Under this standard, the Court must disregard the error if, after examining the record as a whole, it has a "fair assurance" that the error did not affect appellant's substantial rights, because it did not influence the jury's verdict or had but a slight effect. *Casey,* 215 S.W.3d at 885. In assessing the likelihood that the jury's decision was adversely affected by the error, the Court should pay particular attention to factors such as the testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the

character of the alleged error, and how it may be considered in connection with other evidence in the case. *Haley v. State,* 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). The Court may also consider the jury instructions, the State's theories, any defensive theories, closing arguments, voir dire, and the State's emphasis on the error. *Id.* at 518–19. Finally, as discussed above in connection with the underlying question of error, "[i]nstructions to the jury are generally considered sufficient to cure improprieties that occur during trial" and appellate courts "generally presume that a jury will follow the judge's instructions." *Gamboa,* 296 S.W.3d at 580.

In the present case, despite Trevino's attack on the DNA evidence, the State presented a strong case against him, and evidence of the extraneous robbery and the related DNA match clearly served to strengthen the State's proof of identity.

Moreover, during closing arguments, Trevino's attorney stressed to the jury that it could only consider evidence of the other robbery to prove identity, motive, or opportunity (RR vol. 4, pp. 69-70), and the prosecutor likewise argued that the jury should not use evidence of the other robbery to convict him of the present robbery, but should consider it only to show his "modus operandi" or similar manner of committing both offenses. (RR vol. 4, p. 80) Combined with the trial court's own instruction in Paragraph 8 of

16

the jury charge, these should have been sufficient under the circumstances to channel the jury's consideration of the extraneous robbery and ameliorate any harm.

Finally, as discussed in connection with waiver of error, Castro's unobjected-to testimony concerning the liquor store robbery, if it did not waive error, at least rendered harmless any error in the admission of Detective Lee's testimony about the same robbery.

Trevino's first ground of error should be overruled.

**Reply Point No. 2**
**The trial court properly allowed DNA evidence and overruled Trevino's chain-of-custody objection.**

**I. Statement of Facts.**

Bank Teller Yvette Garcia testified that she saw the robber put some items around the front tire of a white pickup truck after the robbery, and that she later directed officers to that location. (RR vol. 2, pp. 58-59)

Detective Rodney Cantu testified that, after he arrived at the scene of the robbery, he found the white pickup truck and the baseball cap, stocking, and shirt that the robber had deposited in the wheel well. (RR vol. 3, pp. 41-42, 44) Detective Cantu testified, on voir dire, that he was present when I.D. Technician Haydee Garcia removed these items and took possession of them. (RR vol. 3, pp. 46, 47)

17

Detective Ralph Lee testified to the procedure by which the I.D. Technician collects, tags, and submits clothing to the D.P.S. Crime Lab for DNA analysis, and that this was done in the present case. (RR vol. 3, pp. 68-69) Detective Lee testified, without objection, that they developed a suspect as a result of the DNA analysis and "CODIS hit." (RR vol. 3, p. 70) After taking Detective Lee on voir dire and establishing that he lacked personal knowledge of the DNA identification of Trevino, Trevino's attorney objected to his testimony on that basis alone, and the trial court allowed the testimony and implicitly overruled the objection. (RR vol. 3, p. 71) Detective Lee then testified, without objection, that the DNA "CODIS hit" identified Trevino. (RR vol. 3, p. 72)

Crime Scene Technician Rosemary Blanton testified to the procedure by which a crime scene technician uses gloves to collect and bag items of evidence and identifies them by initials. (RR vol. 3, p. 126) Blanton also testified to the security measures taken in the evidence storage room. (RR vol. 3, p. 132) The State offered, and the trial court admitted, without objection, SX # 26, the Chain of Custody Report showing that Haydee Garcia accounted for the items in question and promptly sent them "out to lab." (RR vol. 3, pp. 134-36; SX # 26)

When the State called DPS Forensic Scientist Cynthia Morales, Trevino's attorney objected to her testifying to the DNA results on the items tested on the ground that the State failed to show a chain of custody. (RR vol. 3, pp. 162-63) However, after extended discussion and argument, the trial court concluded that it would allow the testimony on the ground that "the chain has been established from beginning to end." (RR vol. 3, p. 168) Morales then testified that she obtained DNA profiles from all three items that matched Trevino. (RR vol. 3, pp. 175, 179, 184-86)

## II. Waiver.

Whether analyzed in terms of waiver, harmless error, or "cured" error, when essentially the same facts are admitted without objection, either before or after the complained-of ruling, erroneously admitted evidence will not result in reversal. *See Coble*, 330 S.W.3d at 282; *Valle,* 109 S.W.3d at 509; *Leday*, 983 S.W.2d at 717-18; *Etheridge,* 903 S.W.2d at 14.

In the present case, long before Trevino raised his present complaint concerning the chain of custody and authentication, Detective Lee had already testified that DNA from the items in question had identified Trevino as the robber. While Trevino did raise a lack of personal knowledge objection to Detective Lee's testimony concerning the results of the DNA analysis, he made no challenge to the chain of custody at that time.

19

Accordingly, he waived chain-of-custody or authentication error concerning later testimony by the DPS analyst concerning the same DNA match that Detective Lee had already testified to.

However, even without Detective Lee's prior testimony, Trevino's chain of custody complaint lacks merit.

### III. Chain of Custody And Authentication.

The Court of Criminal Appeals has stated that "[a] trial judge has great discretion in the admission of evidence at trial, and although the evidentiary rules do not specifically address proper chain of custody, they do state that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims." *Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007) (citing TEX. R. EVID. 901(a)). Accordingly, the trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified. *Druery*, 225 S.W.3d at 502. The reviewing court should affirm the trial judge's decision as long as it is within the zone of reasonable disagreement. *Id.* at 502. Such evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by

circumstantial evidence. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). When authenticated by circumstantial evidence, there must be sufficient "circumstantial indicia of authenticity … to support a prima facie case that would justify admitting the evidence and submitting the ultimate question of authenticity to the jury." *Tienda*, 358 S.W.3d at 647.

With regard to chain of custody issues, it is generally held that proof of the beginning and the end of the chain will support admission of the evidence barring any showing of tampering or alteration. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989); *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.--San Antonio 2006, pet. ref'd); *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.--Houston [14th Dist.] 2001, no pet.); *Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.--Texarkana 1999, pet. ref'd). Specifically, the Court of Criminal Appeals has said that "[t]he chain of custody is conclusively proven if an officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial." *Stoker*, 788 S.W.2d at 10; *see also Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) (citing *Stoker*).

Moreover, the State has no burden to disprove tampering or commingling; rather, the appellant has the burden to present affirmative

evidence of tampering or commingling. *Stoker*, 788 S.W.2d at 10; *Dossett*, 216 S.W.3d at 17. Any gaps in the chain go to the weight of the evidence rather than to its admissibility. *Druery*, 225 S.W.3d at 503-04 (citing TEX. R. EVID. 901(a)); *Lagrone*, 942 S.W.2d at 617; *Stoker*, 788 S.W.2d at 10; *Durrett*, 36 S.W.3d at 208; *Ford v. State*, 26 S.W.3d 669, 674 (Tex. App.-- Corpus Christi 2000, no pet.); *Penley*, 2 S.W.3d at 537.

In the present case, unlike *Stoker*, what is lacking is testimony by Garcia concerning the identifying marks that she placed on the items of evidence at the time she collected them at the scene and that she then deposited them into the property room at the police department. However, Detective Cantu's testimony places the items in Garcia's hands at the scene as evidence. In addition, there was testimony by Detective Lee concerning the standard procedure for collecting, tagging, and submitting evidence for testing. Moreover, subsequent testimony and the Chain of Custody Report suggest that this procedure was followed, that the items were marked and sent to the lab, identified by the analyst at that lab and processed in the same manner as other items of evidence typically are processed in order to preserve the chain of custody. Accordingly, although it would have been better to have Garcia testify at trial, there were sufficient circumstantial indicia in the present case to justify a reasonable inference that she marked

22

the items at the time she collected them and processed them in accordance with standard procedures.

The Court of Criminal Appeals has said that "the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). Such inferences may include an inference that a person acted in conformity with his or her normal procedure under the circumstances. *See West v. State*, 846 S.W.2d 912, 918 (Tex. App.—Beaumont 1993, pet. ref'd) (jury could have reasonably inferred that, rather than under the influence of sudden passion, appellant was handling a conflict with the victim as he normally would based on testimony concerning his normally procedure for settling conflicts); *Smith v. United States*, 343 F.2d 539, 544 (5th Cir. 1965) (inference that government employee acted in conformity with customary practice of mailing checks). By analogy, in the context of a Fourth Amendment challenge heard by the trial court, there is a related "presumption of proper police conduct" which allows for a similar inference that the police properly and legally performed their duties. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007).

Moreover, if the purpose of identifying the beginning of the chain is to account for the entry of the item into police custody, the officer who finds it and observes it being collected by a crime scene technician fulfills that purpose as well as, if not better than, the crime scene technician who collected it. Unlike the technician, the officer can testify to the manner in which the item was discovered and the absence of pre-collection tampering at a time when the item might be most susceptible to tampering or contamination.

In the present case, the trial court acted within its discretion in determining that the items in question, and the resulting DNA analysis on them, had been properly authenticated.

Trevino's second ground of error should be overruled.

**Reply Point No. 3**
**The trial court properly allowed the State to prove up Trevino's prior convictions by testimony establishing Trevino's admission to those prior convictions.**

By his third ground of error, Trevino ostensibly complains that the trial court erred in permitting prosecutor Retha Cable to testify concerning the prior convictions. Trevino waived error by failing to object to this testimony at trial. *See* Tex. R. App. P. 33.1.

However, to the extent that Trevino's argument under this ground of error might be interpreted as a challenge to the sufficiency of the evidence to

24

prove the prior conviction in question, the State will address this point as a sufficiency challenge.

## I. Statement of Facts.

Trevino was indicted as a habitual felony offender, alleging both a 1974 Robbery by Firearms felony conviction in Cause No. 14301 out of the 105th District Court of Nueces County, and a 1982 Attempted Capital Murder felony conviction in Cause No. 82-5-10,654 out of the 24th District Court of Victoria County.  (CR pp. 6-7)

At the punishment phase of trial, prosecutor Retha Cable testified that she had tried Trevino on unrelated charges in 2013, during which Trevino had admitted and stipulated to the 1974 Robbery by Firearms and 1982 Attempted Capital Murder convictions alleged in the present indictment. (RR vol. 5, pp. 8-10)  Cable then identified a copy of the judgment in the 1974 Robbery by Firearms conviction, which was entered into evidence as SX # 28, over Trevino's objection that the judgment had not been properly certified and authenticated as being against the defendant.  (RR vol. 5, pp. 21-23)

The jury found that Trevino had committed only one of the two alleged felonies and assessed his punishment at 45 years in accordance with the range for a repeat offender.  (CR p. 99)

## II. Proving Prior Convictions.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Texas Penal Code provisions in Chapter 12 for repeat and habitual offenders do not require that the fact of a prior conviction be established in any particular manner or with any specific document. *Id.* at 922. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both elements in a number of different ways, including the defendant's own admission. *Id.* at 921-22; *see also Miller v. State*, 33 S.W.3d 257, 262 (Tex. Crim. App. 2000); *Turner v. State,* 733 S.W.2d 218, 221 (Tex. Crim. App. 1987) (an admission by a defendant is sufficient evidence to link him to his prior convictions); *Paschall v. State*, 285 S.W.3d 166, 175 (Tex. App.—Fort Worth 2009, pet. ref'd) (even informal out-of-court admissions made by the defendant in taped phone calls from the jail were sufficient to tie the defendant to prior convictions).

In the present case, Cable's testimony concerning Trevino's admission to the 1974 Robbery by Firearms conviction in question was sufficient to prove that conviction and link Trevino to it, which in turn

26

provided sufficient evidence to support his present punishment as a repeat felony offender.

Trevino's third ground of error should be overruled.

**Reply Point No. 4**
**There is no requirement that the Defendant affirmatively waive on the record his right to testify in his own defense.**

After the State rested at guilt-innocence, Trevino's attorney represented that he had only two witnesses to present – one from the jail, and the other a custodian of records. (RR vol. 3, p. 229) After calling his witnesses, Trevino's attorney then rested and closed, without calling Trevino to testify on his own behalf or presenting a record as to why Trevino was not called. (RR vol. 4, p. 41)

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *see also Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005) (quoting *Harris*). However, the trial court has no duty to inform a defendant about his right to testify. *Johnson v. State,* 169 S.W.3d 223, 235 (Tex. Crim. App. 2005); *Smith v. State*, 286 S.W.3d 333, 341 n.33 (Tex. Crim. App. 2009) (citing *Johnson*). Rather, "defense counsel shoulders the primary responsibility to inform the defendant of his right to testify," and "*Strickland* [ineffective assistance of counsel] provides the

appropriate framework for addressing an allegation that the defendant's right to testify was denied." *Johnson*, 169 S.W.3d at 235.  Moreover, in order to complain on appeal that he was denied the right to testify, the trial record must show that the defendant affirmatively asserted this right.  *See Salinas*, 163 S.W.3d at 741.

In the present case, absent any indication that Trevino asserted, and was denied, his right to testify at trial, he has failed to show that he was denied this right, nor did he even attempt to raise an ineffective assistance claim within this ground of error.

Trevino's fourth ground of error should be overruled.

## PRAYER

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

Respectfully submitted,

/s/ *Douglas K. Norman*
_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@nuecesco.com

28

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 6,231.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that a copy of this brief was e-mailed this on September 29, 2015, to Appellant's attorney, Mr. Roberto G. Vela, at rgvela@yahoo.com.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman